3 minutes per seat, 15 minutes per side, please come to the box, please come to the box. Thank you. Good morning, Neil J. Block for Appellant Summa Holdings Inc. I've reserved 5 minutes for rebuttal. May it please the Court, the question in this case involves the deductibility of commissions paid by the taxpayer, Summa Holding Inc. to J.C. Export Inc., a corporation which met all of the requirements of a domestic international sales corporation, and for which the payments met all of the requirements of a domestic international sales corporation. They met all the requirements for safe harbor deductible export-related commissions to the DISC. However, because the DISC was indirectly owned by a Roth IRA, the tax court held that the allowance of the commission deduction would abuse the contribution limitations of the Roth IRA and disallow the deduction on the basis of substance versus form, relying almost entirely on Notice 2004-8. What's your take on the substance over form doctrine? How does it work? I mean, it sounds, I mean, what they're saying is the case law allows them not just to tell us the economic realities of transaction, but to recharacterize the whole thing to honor the purpose of various tax provisions. Well, I'm sorry, the simple answer is that this court and almost every other court that's had the situation recognizes that because of the DISC's fragile structure being not required to have much substance, minimum substance, that the code and the regulations provide that this corporation doing relatively nothing is entitled to earn safe harbor commissions as long as they meet the requirements of the code and the regulations. And I would point out that in Addison International, this court joined with other circuits in describing the DISC provisions as a promise by Congress to the people taking advantage of the DISC that if they met the technical requirements of the DISC provisions, they would receive the benefits promised by the government, and that would be an abuse of discretion on the part of the Treasury or a part of the Secretary to interfere with that promise. But I don't think the commissioner's position goes to the DISC. I think it goes to the Roth IRA contribution limits. Yes, but if you look at the Roth IRA contribution limits, you'll see that the Roth IRA provides specifically in the text of the first sentence that for purposes of the, all purposes of the code, the Roth IRA is to be treated the same as a traditional IRA except as specifically provided in the code. Don't you think this was basically a legislative malpractice, that they forgot about, they being Congress, forgot about this equality rule that traditional IRAs and Roth IRAs are treated the same unless a code provision says specifically otherwise, and just didn't appreciate this problem with DISC and Roth IRAs owning DISC? It's just, it's a gap. In other words, it's a mistake. They really couldn't have meant to do this. I don't see how it could be a mistake when the Congress addressed the traditional IRA's ownership of a DISC and actually addressed the fact that there was an artificial shifting of income from a taxpayer. Is there any sensible reason for a traditional IRA to own a DISC? You don't get any benefit out of that, do you, a traditional IRA? Sure. You still have the opportunity for appreciation of the DISC dividends. But that doesn't help you, because in a traditional IRA, it's taxed on the way out. But during the, any IRA that you have, you are not taxed during the time of the appreciation of the assets, and therefore, when they're withdrawn, you get, you've had deferred income, the same as if you bought an annuity or other deferred item. But you pay some tax immediately with the DISC commissions. Well, under the 995G provisions, dividends from a DISC are taxed as unrelated business taxable income in order to equal the playing field between the IRA ownership and an individual ownership or a taxable entity ownership. That's why I'm asking the question, would it make sense to own DISC in a traditional IRA? Yes, and a number of people still do, as a matter of fact. Now, there's questions as to the difference in rates, whether or not you can get a lower rate of tax on your distributions in the DISC. There's a number of factors that go into it, but there are many companies, many situations. Your point is it's still rational for a traditional IRA to own DISC. Oh, certainly. The whole idea for these things, that by deferring the time when you owe the taxes, you'll presumably be in a lower tax bracket when you take the money out? No, that's part of it, but part of it is just being able to reinvest the earnings tax-free until they're withdrawn. Now, in the case of our beneficiaries of the IRA, they're in their 30s, and they were in their 20s when these things were set up. Even if they had a traditional IRA, they would have years and years and years of tax-free buildup before they would have to pay tax on their investment income. Whereas outside the IRA, as you make your income or you recognize your income, you pay tax at that point. So the purpose of the DISC provisions themselves were a deferral from income. In other words, the DISC in its normal structure, as it was originally set up and used by corporations throughout the country, was to have the DISC income deferred from tax until it was distributed. And during that deferral period, they got the buildup of tax-free income in the DISC. So the purpose of the DISC itself is a deferral of taxation. Now, the problem with the amendment to 995G was that there was no tax being paid on the distributions from the DISC in the same manner as if an individual who owned a DISC stock would be paying tax. So they implemented the unrelated business taxable income provision so that the distributions from the DISC to the IRA would be subject to tax at that time. But afterwards, the buildup would still be allowed in the same manner as any other after-tax contribution to an IRA. So it's not correct that there's no reason to have an IRA other than the provisions for the Roth IRA. Now, the Roth IRA... I mean, it is pretty astonishing how much money was saved in this Roth IRA. I mean, it is pretty astonishing that this amount of money was able to build up. And, you know, you call them, I guess, commissions as opposed to contributions. But when you're done looking at the whole thing, you sure say to yourself, wow. Actually, as an aside, I don't know that there was any substantial appreciation because if you look at the tax that they... If these beneficial owners, the individuals, had received... had owned the DISC stock and received DISC dividends, they would have been taxed at 15% during the years in issue. By holding their DISC stock in a holding company, which is owned by the Roth IRA, the DISC dividends were taxed at 32% or 33%. So the upfront cost was substantial. And the buildup of tax-free income may not have been that great because of the fact that the income coming into the IRA would still have to be reinvested at a profit. The point being is that they're still paying the upfront tax when the dividends are paid. And we're paying that at 32%? Yes. In other words, the DISC, in this case, stock was owned by a holding company. The holding company was owned by the Roth IRAs. The dividends from the DISC to the holding companies were taxed at ordinary taxable rates, at whatever the graduated rates are for corporations. And it looks like once everything was taken into account, the effective rate of tax is 32%. So it's not a freebie. If it's not a tax-free buildup, there was actually a 32% tax paid on the DISC distributions. And those were done almost automatically, so there was no savings. But you still have to acknowledge, even if tax was paid going in, which is, I guess, true of all the Roth IRAs, you're still way over the 5,000 limit per year. Well, no, all Roth IRAs do not get taxed on their dividends. In fact, the only ones that get taxed on dividends are the ones that are owned by DISCs. If a Roth IRA invests in a corporation, any corporation, and it pays dividends, that dividend is tax-free to the Roth IRA. There is no tax. I understand that, but maybe I'm not following your argument. I'm just saying once the Roth IRAs own the DISC, even though we'll hear from the government, there's a 32% tax on the dividends or commissions, whatever we're going to call them, that go into the Roth IRA. So I get the idea that you're still paying tax as it comes in. Those commissions are still a lot more than 5,000 per year. Well, that's correct. Just remember, the traditional IRA also had contribution limits. You're just saying this is like Facebook or something. If you buy $1,500 shares of Facebook and they're each worth a dollar a share at the very beginning and you luckily get it in your Roth IRA, all the share appreciation and all the dividends are shielded from the contribution limits. Correct. That shouldn't be unusual. And the point here is that under the DISC provisions, DISC dividends are not contributions. They're dividends for all purposes of the code. That's the broad language, all purposes of the code. So that there is no problem with excess contributions because the DISC provisions already treat them as investment income. And that is why it works this way. The Roth IRA says that for all purposes it's to be treated the same as a traditional IRA. And Congress, when they amended 995G, kept in place all of the restrictions against substance versus form that were in the DISC in any situation. And Addison International is clear that the DISC is immune from reallocation of its income under substance versus form. I guess I'm out of time. Thank you. You get your rebuttal. Thank you. Good morning. May it please the Court. Ellen Delsall for the Commissioner of Internal Revenue. This case is not just about payments of DISC commissions, but rather about a larger abusive transaction in which SUMA and its owners, the wealthy Bennison family, set up this DISC for their multimillion-dollar company and used it to shift millions of dollars into Roth IRAs. So just one thing to just either clear out of the way or figure out where we are on it. Is there a section of the code that they violated? Your Honor, the answer to that really is that this is a technically compliant transaction. And the substance over form doctrine has been recognized for decades, going back to Gregory v. Helring in the 30s in the Supreme Court. Let me give you my take on that doctrine, and you tell me what I'm missing. That doctrine, I thought, started with economic realities, so economic substance doctrine. So the code talks about income. And when we decide whether something is income for tax purposes, we're going to look through the form the parties have used in terms of what they've done, which that makes perfect sense. So we know that's one branch of this doctrine, and that sounds pretty good. Then we have sham transactions where they purport to be doing something, but they're really not. That makes some sense. So what seems different here is you seem to be recharacterizing what the law allows, and that's bothersome to me. Well, I think there are cases that have done that. First of all, the Rogers case in the Tenth Circuit, which we cite in our brief, really lays out the difference between the economic substance and sham type of doctrine and the substance of reform doctrine. And they're related but different judicial doctrines. And the substance of reform doctrine has been recognized in cases like the Court Holdings case and in this Court's Eriquip Vickers recommissioner case, and in Cluner in this circuit, Feldman in the Second Circuit, as a doctrine where the taxpayer- Do you think this was a sham transaction? No, Your Honor. I think it was basically a cobbling together- And you don't think it fits under the economic substance? It's not an economic- It's different from the economic substance transaction. It's not a sham transaction, so it's this third category. It's this third category where the taxpayers have taken a bunch of basically a circuitous route that cobbles together all these legitimate steps to, in the end, end up with something that really is circumventing what Congress intended. What I see as your best argument for why this substance over form doctrine exists in its current form is that if you're not careful, you're going to let taxpayers do things that really undermine the purpose of this or that code provision. That is correct. Not undermine the text, but undermine the purpose of this or that code provision. Exactly, Your Honor. What seems problematic about- That's a very broad doctrine, but I'll say it exists. What seems problematic about it here is the whole point of the DISC provisions, the whole point of the Roth IRA is to minimize taxes. But in certain- It's just bizarre to say, ah, you're allowed to use them to minimize, but, oh, you really minimize them. And we get to come in and say you minimize them too much. The purpose is minimization. Well, the purpose is minimization in a very contained manner with respect to both regimes. The Roth IRAs were something that Congress intended for working class Americans to be able to, as a retirement incentive. And it said you could put this limited amount of money, which for 2008, the year in issue, was $5,000. So are you out of curiosity, there's some very wealthy people putting shares in their Roth IRAs when they're low value, which soon after they're issued, no one knows what's going to happen to these shares, whether it's Facebook or something else. They accumulate a lot of money, millions and millions of dollars. Are you guys coming into those cases and saying, whoa, you're not working class. You're a millionaire. First of all, I have to stop you there. But you don't do that, do you? I have to stop you with your first premise that these wealthy individuals are doing that because Congress put limits on annual income regarding who can put money in a Roth IRA. So if you make, as a single filer in 2008, more than $116,000, if your modified adjusted gross income is more than $116,000, you can't put money in a Roth IRA. Or if you're a married filer, it was $169,000. You said they complied with the statutes here. Well, here, the sons in the year in issue had modified gross income that allowed them in the initial year to, I guess, So all I have to do is modify my hypothetical to take the rich individual who's looking after the children. Well, I think what the case law You don't come in Well, there's another step to this, Your Honor. That was just the first limitation. But the substance of reform doctrine looks Just to finish the point I was making. A very wealthy individual could put shares under $5,000 a year of value, get the valuation below that amount, to their children and let them grow to $100 million. If you don't come in and say, oh, wait, wait, wait. This is for working class people, not the children of the rich. Do you come in and do that? We don't. Why not? I can address the difference here, Your Honor. The substance of reform doctrine looks at whether something is set up for a tax avoidance scheme. And the way Congress structured the Roth IRA is they do permit someone with income under the certain amount to put this money in and invest it over time. And if the market grows in legitimate corporate growth, that's one thing. But this was a situation where they stipulated this was designed for tax avoidance. The disc, J.C. Export, J.C. Holding were created for no other purpose. They would have been lying had they hadn't. Everybody who puts money in a Roth IRA has to acknowledge it's for a tax avoidance reason. But this was also not a legitimate investment. This was a situation where Summa was an existing company that already was generating profits. And it was basically they put in this $1,500, and there was not corresponding corporate growth. Are you challenging the valuation? I think the valuation is part of the question. I mean, it's part of the number of factors that are considered here. Listen, I love the fact you're pushing back on me. I love it. But just make sure you're pushing back on the right thing, which means you have to listen to the end of the question. That's all I ask of you. So I didn't think in this case the commissioner below challenged the valuation of the 1,500 shares. Are you telling me I'm wrong about that? Well, I think it's pretty – it's very obvious. Did you challenge it below? I don't think there was a specific focus. I think that was one of the factors that the court looked at. The court was saying, you know, look, this is a situation where they're just using this to transfer these funds. And I think there was no evidence of corporate growth. That's not the premise of the administrative decisions, that the 1,500 shares were undervalued and that that was the fraud. Well, I think it's a weighing of – the substance of reform is a weighing of a number of factors. And the tax avoidance motive is really a key factor. And when that's conceded, that they actually tried to set these schemes up to achieve that, that is one indicator that this is not – this was just set up to avoid taxes. Another indicator, I think, is the fact that they didn't ever use the DIS for their deferral purposes. The DIS regime was designed just to say that you can have this transfer of this commission money without it having – being an arm's length transaction. And it was designed to give corporations – basically to put them on equal footing if they were a domestic corporation selling abroad with a corporation that used – a domestic corporation that used foreign subsidiaries. Why did you only go after them for the 2008 year? I'm sorry? Why did you only go after them for the 2008 year? I think that was just the administrative reality of you can't catch everyone on time, necessarily. Not them. Well, but obviously not in time for the earlier years. Oh, you're saying the statute of limitations had run. I mean, I think that was the situation that by the time the commissioner had worked up this case, the statute had run and that that's – But that is the reality. I think that's – that's my understanding of the reality, Your Honor. If I'm wrong on that, that's my understanding. And I think – additionally, I think there was another factor of the – part of the delay was under the Hellwood case, the court addressed this issue, a similar situation, and the commissioner hadn't made income and excise tax deductions. And the court said those schemes are intertwined and the court – and both types of adjustments have to be made. And so I think it took time for the commissioner to sort of get ducks in a row and make the right adjustments in this case and bring this case. And I think that's part of why this wasn't addressed in the earlier years. What's your take on the thing I asked your friend on the other side, that I think this whole case arose because Congress just made a mistake. They didn't realize – they realized the interrelation of traditional IRAs and DIS. But, you know, there's this provision that says normally we treat – unless we say otherwise, we treat traditional and Roth IRAs the same. And people just didn't realize the opportunity for tax avoidance with Roth IRAs. Well, I think Roth IRAs have been used for this type of transaction because they do generate a greater tax avoidance opportunity. They let you avoid – if you invest – if you have money in a Roth IRA, it can be invested in the market. And in this case, for these sons, if this were allowed, they could invest for 30 years or so before they have to start taking money out. And they – you know, and that lets all those earnings in the market be tax-free. But I think if it were the same sort of transaction hasn't been pursued because it doesn't yield as much benefit. But if for purely tax avoidance purposes, a taxpayer were to similarly invest in a regular IRA in contravention of the contribution limits and on a record where they didn't use the DIS for the deferral purposes and then got all that tax deferral, I think that would be similarly problematic. And we certainly haven't said we wouldn't. Do you agree with Mr. Block that the commissions – they're calling them commissions before they're recharacterized – they were paying 32 percent. So the real problem isn't tax avoidance in that sense. The real problem is that they – these people shouldn't have been able to do Roth IRAs at all. I don't recall off the top of my head what the corporate rate was, so I can't tell you whether it's 32 percent or not, but that would be in the code. But certainly they did pay tax. And the real issue is the not – the ability to earn investment income without paying taxes, as Your Honor said. Once it's in the Roth IRA, you can invest this money, you can put it in the market for years and years, and you don't recognize any – But isn't most of the money – what I'm trying to figure out is, let's call the corpus in the two Roth IRAs being 5 million. How much of that was taxed on the way in? I think at this point, most of it was. I think in this window, we had the two – we had a recession and maybe – That gets back to my point. Your real objection here is that these people should not have been able to have Roth IRAs at all. They shouldn't have been. And they shouldn't have been able – and this – basically, if this transaction is allowed, it creates a mechanism where a wealthy family that has – or an individual who has a business that's doing business abroad can use this mechanism to put money in Roth IRAs and basically have a tax-free investment vehicle that's not available to the rest of us. When Congress intended Roth IRAs to be subject to not only the income limits, but the amount of contribution per year limits. And this is allowing intentional shifting of huge amounts of corporate – what otherwise would be corporate profits. And I think, as in Eric Whipp v. Vickers and Feldman, the correct approach is to completely recharacterize the transaction as what it really was – dividends to the shareholders and then payment into the Roth IRAs, which contravene the contribution limits. And those cases demonstrate – What's just so hard for me is I get the recharacterizing transactions when it's going to what the economic reality is, or if it's a sham. What I don't get is recharacterizing when you follow each – the words, the form of each statute. Well, I think this court – It's really bizarre to me that the commissioner gets that power. Well, the court's precedent in Eric Whipp, I think, is very much on point. And I think the Seventh Circuit's opinion in Feldman is a very good example as well. Situations where the taxpayers – particularly in Eric Whipp, the court said every step in the transaction was legitimate and had economic substance, but ultimately they were using these multiple steps to get to something that avoided tax that wasn't what Congress intended. And I think – This rewards Congress for the complexity of the code and for inattentiveness to these problems. Isn't it better for the courts to say, hey, you're bad, fix it if you don't like this, but we're not going to punish them for complying, quote, technically with the statute? Technically means the words of the statute. Well, I think what the courts have recognized is that there are always going to be an endless number of – as the ASA Investorings Court from the Seventh Circuit said – It gets back to my point. If there's going to be – you know why there's going to be an endless number of these? Because Congress has made the code so complicated. Why reward them? And why then say to the commissioner, oh, you can just kind of look over this, and when you're not happy with how it's working out, you can fly right in and say, time for recharacterization. Well, I think it's not a matter of rewarding Congress. It's a matter of rewarding the taxpayers who come up with these schemes. And the reality is that Congress has lots of reasons that they may or may have not acted. With respect to this, amending the DIS provisions in particular, the DIS provisions have raised a lot of concerns abroad. They initially were very much criticized by the European Union and the World Trade Organization, and then they were largely cut back. What do the studies and empirical evidence show about who uses Roth IRAs? My strong suspicion is they're used by the wealthy. I've never studied that, Your Honor, but I think there are a lot of lower-middle-income taxpayers who do put money in Roth IRAs because it's a very sensible savings device, and I think that was what it was intended for, and this certainly flies in the face of that. And I think you can't say, you know, if the courts aren't willing to step in and deal with these situations where, you know, as the D.C. Circuit said in ASC Investigations, you have endless numbers of clever tax practitioners trying to figure out a way around the code, you would just have a situation where there could be all sorts of abuses. And I think the Supreme Court and other courts of appeals in this circuit have all addressed them through the substance over form doctrine. And these taxpayers knew that this was a listed transaction. This was identified in... What's your best example of a U.S. Supreme Court decision that applies substance over form the way you're using it here? Not sham transaction, not economic substance, but substance over form the way you're trying to use it in this case. What would be the best U.S. Supreme Court decision? Well, I think the court holdings decision is probably... Which one? Court holdings, which dealt with a situation where... Is that the Black decision, Justice Black decision? What year is it? Forty-five. Yeah, okay. I think I know the one you're talking about, yeah. And I would just point out that this Court's opinions in Eriquette v. Vicker and Kloener, which are binding precedent, are also good examples of that. Let me find the court holdings decision. I thought I had a copy of it here. Those are all recharacterizing tax minimizing statutes? Well, I think there are situations where different steps were used to accomplish something. No, but the statutes at issue in those cases, were they tax minimizing statutes that were just used aggressively as opposed to other statutes? Because that's what's funny about this case. Well, I think this is a unique thing about this case, but I think it's important to recognize that these tax minimizing statutes are being used in a way they weren't intended by Congress. And all of these cases that have applied and look at the economic reality have looked at the fact that these were situations where the taxpayers tried to do something Congress didn't intend. And that's what's been done. Under court holdings, the Court is talking about whether the true nature of the transaction impairs the effective administration of the tax policies of Congress. Here it seems to me we're more talking about timing than anything. So why does allowing the taxpayer to do what the provisions in the tax code permits them to do, in this case impair the effective administration of the tax policies of Congress? Well, it allows putting money in a Roth IRA in vast amounts beyond what Congress intended and basically creating a tax-free investment vehicle for these wealthy individuals that Congress didn't intend. And they're using the disk in a way that Congress didn't intend. This disk wasn't set up to give them equality for export purposes with companies with foreign subsidiaries. It was set up solely to funnel this money to the disk. And the stipulations on page 707... What would happen in this case if the Benenson family did everything it did except that the shareholders of the last corporation were the employees of the company? I'm sorry, the shareholders of... What do you mean by the last corporation? You mean J.C. Holding? Yes. In other words, instead of it being the two Benenson children who were the beneficiaries of this, what if they'd done everything else the exact same way but the beneficiaries were all... So they gave the disk shares to low-level employees. Well, employees across the board. They don't discriminate. Well, the first issue would be, did they have incomes that would allow contributions to the disk during the years at issue? And the second issue would be, did they give them... Did they give two employees half ownership in a disk and then put millions of dollars into that disk? So the way you would have set it up is you would have said, every time someone's getting more than $5,000 a year, we're going to void it, right? Right. And every time someone makes more than $132,000 or whatever the income threshold was, we're going to void that. But for everyone else, we're going to allow it. That's how you would have handled it. Well, I think if you had a situation where the employees all made under the income threshold and their interest in the disk really reflected an investment that was a real value in proportion to what they're getting in terms of disk commissions, as opposed to simply a mechanism for funneling money to them, I think that would be okay. If it were something where the corporation said, we're not going to play our employees, we're going to set up this mechanism to funnel money to them into their Roth IRAs, I think there might be problems there. And as the Supreme Court has emphasized in cases like Gregory v. Halvering and court holding, this is really a facts and circumstances inquiry, and I think you'd have to look at all the facts and circumstances involved in that case. Did you finish that? I'm sorry if I interrupted that. Are there further questions from the court? I see my time's expired. Thank you very much. All right. Thank you. Thank you. I'll try to get to some of the less controversial items first so I don't finish the other ones. The actual rate of tax was 33.46%. We have that in our brief. The Halvering decision concluded that the situation, there was not a listed transaction because none of the three requirements for the notice 2004-8 were met, and therefore it was not a listed transaction. So the court did not have to consider that as whether or not to give it deference. The reason why this thing got brought up in the middle of the game was that the service had issued documents saying that they would respect the income tax consequences of the Roth IRA transactions. They were only going after the excise taxes. Only after they lost the Halvering case did they change their mind and decide that the income tax consequences were abusive. But it was 2008 because at that point the statute of limitations... 2011. But I'm saying... Of the 2008... I'm saying it was a statute of limitations problem in terms of going to 2007. Yes. I got it. I got it. But that's because they had said that they were going to respect the disk provisions. Rev. Rule 8154 values disk stock at book value and all these disks are newly incorporated entities. That's why you don't get a higher valuation. So what's your view of whether the lower courts or the administrative entities thought this was a fair valuation, the 1,500 shares of $1,500? Because that's the book value and 8154 values disk stock at any given time. I'm just saying is it conceded in this case that that was fair? It wasn't raised. It wasn't raised. Okay. It's just not an issue in this case. And my reason why you think it was not raised is because of Rev. Rule 8154. Right. The concept of all the rich being over $5,000, there is the IRA rollover provisions in place right now where you can take your regular IRA and roll it all over into a Roth IRA and therefore you avoid the $5,000 amounts even if you have a higher income. You can have... And there's no limit on that in terms of the wealth of the individual? No. Whatever's in their IRA, they can pay a tax on the appreciation, roll it into a Roth IRA. Is that a one-time deal that's now come and gone? No, no. It's still in place. It's still the techniques that's used. Congress broadened the ability to get the Roth IRA. The other thing too is that in terms of reliance, and I'll be frank with you, when the Roth IRAs came out, people said, well, should we think about a Roth versus a traditional? Well, we looked at the statute. The statute said that it should be treated identically to the traditional IRA unless the code provides otherwise. That's the code. That's the law. If Congress didn't mean it, then it seems it's Congress's decision to change it, not a judicial law fixed for Congress because the words of the statute are as precise as I could find. It says, except as otherwise... Well, in the regulations, except as otherwise provided in the code, the Roth is to be treated the same as a traditional, period. Take it if these contributions had gone into a regular IRA, would you still have had to pay this 33% rate? Yes. You would? Okay. Well, if that's where you structure it, yeah. I see. Ms. DeSole said that this case is unique in the substance over form doctrine cases in the sense that this is unique because it's the only one where the underlying provisions in the code that are at issue are all tax-minimizing provisions. Is that true? Are there other cases out there dealing with substance over form where the statutes and transactions being recharacterized dealt with tax-minimizing statutes? I'm not sure because in our case we're not recharacterizing anything. We're simply following the agreement... I'm saying they're the ones doing the recharacterizing and I'm just saying my question to her is this is funny because the underlying statutes, whether the DIS or the Roth IRA, are tax-minimizing statutes. So it's kind of funny to say you can tax-minimize but just not too much. And I'm just trying to figure out if any of the other substance over form cases dealt with tax-minimizing statutes the way this one does. I'm not sure it does. All I know is that the legislative history to the Roth IRA encouraged people to choose the Roth IRA over traditional solely for tax avoidance purposes and solely for the purpose of getting the benefit of the tax-free withdrawal after 59 1⁄2. So, I mean, basically what you're talking about is taxpayers doing what Congress intended. I mean, I find that disingenuous that we're finally saying that Congress made a mistake when Congress seemed to do exactly what it wanted to do. And the point being on the traditional IRA, when Congress could have done anything it wanted with it but what Congress did was it simply made disk distributions to an IRA taxable as unrelated business taxable income. It did not change one word of any of the provisions, including those which gave safe harbor treatment to disk transactions resulting from exports. This is an export incentive and it's still one. Thank you. All right. Thanks to both of you for your excellent briefs and arguments. Thanks for answering our questions. We appreciate it. The case will be submitted and the clerk may call the next case.